Ameer Benno, Esq.
BENNO & ASSOCIATES P.C.
30 Wall Street, 8th Floor
New York, NY 10005
Tel.: (212) 227-9300
abenno@ameerbenno.com





UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID ZADOK,<br><br>        Plaintiff,<br><br>vs.<br><br>THE CITY OF NEW YORK, POLICE OFFICER GARFIELD MEAD (SHIELD #28074), POLICE OFFICERS "JOHN/JANE DOES 1-10," KEITH MORRIS, CHARMAINE COOMBS, AND WAYNE "ROE,"<br><br>        Defendants. | Case No.:<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, by and through his undersigned attorney, alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1988, and 3601, for violation of his civil rights and liberties under federal statutes and the United States Constitution, including but not limited to violations of his rights under the Fourth and Fourteenth Amendments.   Plaintiff also asserts claims under New York law.

## JURISDICTION

2.      This Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C §§ 1331, 1343(a), (3), and (4).

COMPLAINT - 1

1

## VENUE

2    3.    Venue is proper for the United States District Court for the Southern District of

3    New York pursuant to 28 U.S.C. § 1391(b) and (c).

4

## JURY TRIAL DEMANDED

5    4.    Plaintiff demands trial by jury of all issues properly triable thereby.

6

## THE PARTIES

7    5.    Plaintiff David "Dror" Zadok is a legal resident and domiciliary of the City and

8    State of New York.

9    6.    That at all times herein mentioned, defendant City of New York (hereinafter

10   "City") was and is a municipal corporation, duly organized and existing under and by virtue of

11   the laws of the State of New York.

12   7.    That at all times herein mentioned, defendant City operated, controlled and

13   maintained a police force known as the New York City Police Department ("hereinafter

14   "NYPD").

15   8.    That at all times herein mentioned, defendant Police Officer Garfield Mead

16   (hereinafter, "Mead") was and is an NYPD officer employed by defendant City.

17   9.    That at all times herein mentioned, defendant Mead was acting within the course

18   and scope of his employment with defendant City.

19   10.    That at all times herein mentioned, defendant Mead was acting under color of

20   state law.

21   11.    Defendant Mead is sued herein in both his individual and official capacities.

COMPLAINT - 2

12.     That at all times herein mentioned, defendant Police Officers "John/Jane Does 1 through 10" (hereinafter, "Does 1-10") were and are NYPD officers employed by defendant City.

13.     That at all times herein mentioned, defendants Does 1-10 were acting within the course and scope of their employment with defendant City.

14.     That at all times herein mentioned, defendants Does 1-10 were acting under color of state law.

15.     The names "John/Jane Does 1-10" are fictitious, as these defendants' true names are presently unknown.

16.     These defendants are intended to be the law enforcement personnel involved in the events described in this Complaint, including the arrest, detention, assault, battery, searches, imprisonment, and prosecution of plaintiff, or the authorization, ratification, and encouragement of the same.

17.     That Does 1-10 are sued herein in both their individual and official capacities.

18.     Defendant Keith Morris is a resident of New York County, and at all times herein mentioned, was and is the owner and landlord of an apartment located at 522 West 152nd Street, Apartment F1, New York, NY 10031.

19.     Defendant Charmaine Coombs is a resident of Windsor, Connecticut, and at all times herein mentioned was and is defendant Keith Morris's sister.  At all times herein mentioned, defendant Coombs was and is the account holder of a Bank of America bank account, with account number ending in 1335.

COMPLAINT - 3

20.     Defendant "Wayne Roe" is believed to be a friend and/or family member of defendant Keith Morris. The name "Wayne Roe" is fictitious, as this defendant's true name is presently unknown.

21.     At all relevant times herein, the individual defendants acted jointly and in concert with each other.

22.     Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants, but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## **FACTUAL BACKROUND**

23.     The facts stated in this complaint are based, inter alia, on the personal knowledge of plaintiff regarding events in which he was directly involved and upon information and belief. The sources of "information and belief" factual statements are primarily documents from the underlying criminal prosecution and related public documents which are currently available to plaintiff. Those sources are incomplete, particularly, without limitation, as to numerous documents and court exhibits. This complaint is drawn without the benefit of full discovery proceedings.

24.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

25.     On or about January 14, 2014, plaintiff entered into a written lease agreement with defendant Keith Morris to rent a private furnished apartment located at 522 W.152nd Street, New York, NY 10031 (hereinafter, "the apartment" or "the subject apartment").

26.     The duration of the lease was from January 14, 2014 through January 1, 2015.

27.     Defendant Keith Morris instructed plaintiff to make all rent payments to defendant Morris's sister, defendant Charmaine Coombs.

COMPLAINT - 4

28.     Upon the execution of the lease agreement, plaintiff moved his personal belongings into the apartment.

29.     Thereafter, plaintiff made regular rent payments to Charmaine Coombs by transferring said payments into defendant Coombs's Bank of America bank account, ending in 1335.

30.     In or about March of 2014, the Keith Morris's parents showed up at plaintiff's apartment and remained there for an extended period of time without plaintiff's consent, permission or authority.

31.     On or about April 8, 2014, an individual named Nafis Karim showed up at plaintiff's apartment and informed plaintiff that he was a friend of defendant Keith Morris, that defendant Keith Morris had given him the key to the apartment, and that defendant Keith Morris had told Mr. Karim that he could reside in plaintiff's apartment indefinitely.

32.     Thereafter, Mr. Karim began residing in plaintiff's apartment without plaintiff's consent, permission, or authority.  At no time did plaintiff give his consent, permission or authority to lodging Nafis Karim in his apartment.

33.     After Nafis Karim moved in to plaintiff's apartment, plaintiff informed defendant Keith Morris that the situation was unacceptable, but defendant Keith Morris took no steps to remedy the situation.

34.     Thereafter, plaintiff withheld rent payment as was his legal right.

35.     On or about May 11, 2014, defendant Keith Morris told plaintiff that he was giving plaintiff 72 hours to vacate the premises and that if plaintiff did not comply, defendant Keith Morris would physically remove plaintiff's belongings from the apartment and change the locks.

COMPLAINT - 5

36.     In the morning of May 13, 2014, defendant Keith Morris entered plaintiff's apartment without permission and without legal justification.

37.     Defendant Keith Morris forced his way into plaintiff's bedroom, the door to which was locked, woke plaintiff up, threatened him physically, and physically removed plaintiff's food, bed, and bedroom furniture from the apartment.

38.     In response, plaintiff called 911 and sought help.

39.     Thereafter, a male and a female police officer responded to plaintiff's apartment.

40.     The male officer was defendant Mead and the female officer, whose name is presently unknown, is included in the above-named "Doe" defendants.

41.     Defendant Morris acknowledged to the defendant officers that plaintiff had rented the entire apartment, but stated that Nafis Karim was a "visitor" who was only staying for a short period of time, that defendant Morris wanted plaintiff to leave the apartment permanently, and that defendant Morris wanted to change the locks on the door to the apartment.

42.     Defendant officers informed defendant Morris that if he wanted to evict plaintiff and change the lock, he was required to go to housing court.

43.     Defendant Morris told defendant officers that plaintiff was Jewish, and that defendant Morris went to housing court, he hoped the judge in housing court would not be Jewish, as well.

44.     Upon being told by defendant Morris that plaintiff was Jewish, defendant Mead and the female police officer accompanying him, who is included in defendants Does 1-10, became hostile toward plaintiff and disinterested in anything that plaintiff had to say, and told defendant Morris that defendant Morris was permitted to take the furniture from plaintiff's bedroom.

COMPLAINT - 6

45.    Said defendant police officers refused to look at plaintiff's lease, despite the fact that he offered it to them.

46.    Defendant Keith Morris never initiated any housing court action, and never obtained a warrant of eviction.

47.    Thereafter, on May 24, 2014, defendants Charmaine Coombs and "Wayne Roe" entered plaintiff's apartment without plaintiff's consent, permission, or authority, and without lawful justification.

48.    Defendants Coombs and "Wayne Roe" menaced, threatened, and physically and violently assaulted plaintiff, and told plaintiff that he had to vacate the apartment by the next day.

49.    Despite their threats, plaintiff did not vacate the apartment.

50.    On May 27, 2014, at approximately 9:55 a.m., defendant officer Mead and the same female officer who had accompanied defendant Mead to plaintiff's apartment on May 13, 2014, and who is included in defendants Doe 1-10, kicked open the door to plaintiff's bedroom in the subject apartment, and both officers brutally assaulted plaintiff, throwing him forcefully onto the floor, and affixing handcuffs on plaintiff's wrists with excessive tightness causing plaintiff to suffer substantial pain.

51.    When plaintiff asked said defendants if plaintiff could show them his lease, said defendants officers replied in the negative.

52.    Said defendant officers then falsely arrested plaintiff, in that they placed plaintiff under arrest without any lawful basis or justification.

53.    Upon being placed into police custody, plaintiff was unlawfully imprisoned for an extended period of time.

COMPLAINT - 7

54. After being brought back to the police precinct for arrest processing, plaintiff was interviewed by approximately three (3) other NYPD police officers, all of whom are included in defendants Doe 1-10.

55. Plaintiff told said officers that he had a lease for the subject apartment, which was approximately one block away from the police precinct.

56. Plaintiff asked said Doe defendant officers to bring him to his apartment so he could show them his lease, but said Doe defendant officers refused, and instead materially assisted and encouraged plaintiff's illegal arrest, detention, and prosecution.

57. During the course of plaintiff's illegal imprisonment, he was transported from the police precinct to Kings County Central Booking by approximately two other NYPD officers, both of whom are also included in defendants Doe 1-10.

58. Said defendant officers acknowledged the illegality of plaintiff's arrest and imprisonment, and told plaintiff that if he had a lease, then he should never have been arrested. Nevertheless, said Doe defendants took no steps to protect against the continued violation of plaintiff's rights.

59. While plaintiff was unlawfully imprisoned, defendants knowingly relayed false allegations against plaintiff that they had devised to the New York County District Attorney's Office, which used that information to draft a criminal court complaint against plaintiff.

60. Thereafter, defendants signed said criminal court complaint, which, based on the fabricated information that defendants had provided to the District Attorney's Office, charged plaintiff with, among other charges, one count of Burglary in the Second Degree, a felony.

61. Plaintiff did not commit any of the offenses with which he was charged, nor did he commit any offense or engage in any unlawful conduct on or before May 27, 2014.

COMPLAINT - 8

62.     Defendant Mead signed the criminal court complaint, thereby swearing to the veracity of its allegations, under penalty of perjury, despite his knowing that there was no truth to those allegations whatsoever, that these allegations against plaintiff were false and completely fabricated, that there was never any legal basis to have detained or arrested plaintiff, and that there was no legal basis to prosecute him.

63.     All defendants conspired to lodge these false allegations against plaintiff and initiate a prosecution against him for offenses they knew he did not commit.

64.     Defendants made these false allegations against plaintiff with actual malice, and out of spite and ill will, and with retributive purpose.

65.     Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to plaintiff's constitutional and civil rights.

66.     Thereafter, plaintiff was arraigned on that criminal court complaint under New York County Docket Number 2014NY040931.

67.     Plaintiff pleaded not guilty to all counts, bail was set, and an order of protection was put in place.

68.     Plaintiff was held in custody for approximately ten (10) days before his bail could be posted and plaintiff released from confinement.

69.     Upon being released on bail, plaintiff went to the police precinct, informed the officers of the pending prosecution and the existence of the order of protection, and asked said officers for assistance in helping plaintiff obtain his belongings which had been left in the apartment when he was arrested.

70.     Thereafter, defendant Mead escorted plaintiff to the subject apartment so that plaintiff could collect his belongings.

COMPLAINT - 9

71.   Nafis Karim opened the door for plaintiff, and several seconds later, defendant Mead told plaintiff that if he did not leave the apartment immediately, he would be arrested again.

72.   Defendant Mead did not permit plaintiff to take more than one bag with a laptop and few clothes.

73.   Because the police defendants did not permit plaintiff a reasonable amount of time to collect his belongings, most of plaintiff's belongings, like his bed (which he purchased after defendant Morris had illegally taken his first bed from him, as described above), clothes, shoes, phone, wallet, identification, money, and several sentimental items such as photographs, documents, and letters had to be left there.

74.   The police officer defendants informed plaintiff that if he ever returned to the apartment, he would be arrested.

75.   Plaintiff thereafter was required on several occasions to appear in court to defend against these false criminal charges that had been lodged against him.

76.   In October 2014, defendant Keith Morris told the prosecutor assigned to prosecute the criminal case against plaintiff that that he had moved plaintiff's belongings from the subject apartment to Morris's apartment on West 147th Street, and that he had rented plaintiff's apartment to someone else.

77.   Thereafter, the Criminal Court modified the order of protection against plaintiff to permit him to go to defendant Morris's apartment on W. 147th Street with a police escort to claim his belongings.

78.    Plaintiff subsequently went to defendant Morris's apartment on W. 147th Street with a police escort to claim his belongings, but Keith Morris did not open the door, and did not answer his phone.

79.    Upon information and belief, defendant Morris destroyed and/or permanently disposed of and/or converted to his own all of plaintiff's belongings that had been left in the subject apartment at the time of plaintiff's unlawful arrest.

80.    Upon information and belief, during the course of plaintiff's prosecution, defendants signed supporting depositions wherein they averred, under penalty of perjury, the veracity of the allegations contained in the criminal court complaint, despite knowing that the allegations against plaintiff were false and completely fabricated, that there was never any legal basis to have detained or arrested plaintiff, and that there was no legal basis to prosecute him.

81.    All defendants conspired to lodge these false allegations against plaintiff and initiate a prosecution against him for an offense they knew he did not commit.

82.    Defendants made these false allegations against plaintiff with actual malice, and out of spite and ill will, and with retributive purpose.

83.    Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to plaintiff's constitutional and civil rights.

84.    The prosecution of plaintiff continued until approximately April 15, 2015, at which time all charges against plaintiff were dismissed.

## STATE ACTION BY DEFENDANTS MORRIS, COOMBS, AND "ROE"

85.    By virtue of the NYPD's <u>de facto</u> policy and/or practice of permitting property owners to unlawfully repossess property to which tenants, such as plaintiff herein, has legal entitlement, defendants Keith Morris, Charmaine Coombs, and Wayne "Roe" acted under color

COMPLAINT - 11

1  of law in that they were granted by members of the NYPD, including defendants Mead and

2  DOES 1-10, a status according to which defendants Morris, Coombs, and "Roe" acted as

3  deputies of the NYPD.

4       86. Further, defendants Morris, Coombs, and "Roe" acted under color of law in that

5  they willfully participated jointly with members of the NYPD, including defendants Mead and

6  Does 1-10, and members of the NYPD arrested plaintiff based solely on the direction of

7  defendants Morris, Coombs, and "Roe", without first learning any facts, without making any

8  inquiry, and without conducting any investigation whatsoever.

9       87. Defendants Morris, Coombs, and "Roe" willfully participated in joint activity

10  with defendant City, its agents, servants and/or employees, including defendants Mead and

11  Does 1-10, in having plaintiff detained, arrested, imprisoned, and prosecuted without

12  justification, privilege, or probable cause.

13       88. Plaintiff at no times engaged in any prohibited or illegal conduct.

14  DAMAGES

15       89. As a result of the foregoing, plaintiff was severely and seriously physically and

16  mentally injured, suffered a loss of enjoyment of life and a loss of liberty, suffered great

17  indignity and humiliation, was held up to scorn and ridicule, was injured in his character and

18  reputation, and suffered economic and pecuniary damages and loss, deprivation of his

19  constitutional rights, and other damages.

20       90. That by reason of the foregoing, and as a result of the aforesaid actions and/or

21  omissions of defendants, plaintiff was severely injured, bruised, wounded, suffered, still suffers

22  and will continue to suffer for some time, great physical pain and serious and severe bodily and

1  mental injuries and mental anguish and has become sick, sore, lame and disabled and will

2  remain so permanently and/or for a considerable length of time.

3       91.    That by reason of the foregoing, and as a result of defendants' aforesaid actions,

4  plaintiff was caused to sustain serious injuries and to have suffered pain, shock, and mental

5  anguish; that these injuries and their effects will be permanent; and as a result of said injuries

6  plaintiff has been caused to incur and will continue to incur expenses for medical care and

7  attention; and plaintiff was and will continue to be rendered unable to perform his normal

8  activities, duties and vocation and has sustained a resultant loss therefrom, including medical

9  expenses, loss of wages and other related expenses.

10       92.    That by reason of the foregoing, and as a result of defendants' aforesaid actions,

11  plaintiff is informed and verily believes that his aforesaid injuries are permanent and he will

12  permanently suffer from the effects of their aforesaid injuries and he will be caused to suffer

13  permanent embarrassment and continuous pain, suffering, inconvenience and loss of enjoyment

14  of life.

15       93.    The amount of damages sought in this action exceeds the jurisdictional limits of

16  all lower Courts that might otherwise have jurisdiction.

17  ## FIRST CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

18  ### (False Arrest/Imprisonment Under 42 U.S.C. § 1983)

19       94.    Plaintiffs incorporate herein by reference each and every allegation set forth

20  above as though fully set forth herein.

21       95.    Defendants, while acting in concert and within the scope of their employment

22  and authority, and without a warrant, seized plaintiff, forcibly put plaintiff into handcuffs,

23  placed plaintiff under arrest without any reasonable cause to believe that plaintiff had

24  committed, was committing, or was about to commit any offense, and caused plaintiff to be

COMPLAINT - 13

imprisoned and incarcerated at various facilities, and thereby deprived plaintiff of his rights, liberties, and freedoms under color of state law, including plaintiff's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

### (Malicious Abuse of Process Under 42 U.S.C. § 1983)

96.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

97.     Defendants, acting in concert and within the scope of their employment and authority, employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  Such collateral objective included, but was not limited to, covering up defendants' illegal actions in knowingly arresting plaintiff without any legal basis, justification, or probable cause.

98.     The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and that by virtue of the aforementioned acts, plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable or unlawful searches and seizures and to due process of law.

COMPLAINT - 14

## THIRD CLAIM - AGAINST DEFENDANTS MEAD AND DOES 1-10

### (Excessive Force Claim Under 42 U.S.C. § 1983)

99.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

100.     Defendants, acting in concert and within the scope of their employment and authority, used objectively unreasonable force against plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM - AGAINST DEFENDANTS MEAD AND DOES 1-10

### (Equal Protection Claim Under 42 U.S.C. § 1983)

101.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

102.     Defendants, acting in concert and within the scope of their employment and authority, deprived plaintiff of equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

## FIFTH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

### (Unlawful Seizure of Property Under 42 U.S.C. § 1983)

103.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

104.     As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper and unlawful seizure of his personal property without any probable cause, privilege, or consent.

COMPLAINT - 15

105.    That the seizure of plaintiff's property was objectively unreasonable and in violation of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

### (Failure to Intervene Under 42 U.S.C. § 1983)

106.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

107.    Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having had a realistic opportunity to do so, in violation of plaintiff's right under the Fourth and Fourteenth Amendments to the United States Constitution.

## SEVENTH CLAIM - AGAINST DEFENDANT CITY

### (Municipal Liability "Monell" Claim under 42 U.S.C. § 1983)

108.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

109.    The individual defendants, singly and collectively, while acting within the scope of their employment and authority and under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the NYPD and their specific precinct(s) forbidden by the Constitution of the United States.

110.    The foregoing customs, policies, practices, procedures, rules, and usages include, but are not limited to, making arrests without probable cause, subjecting individuals to excessive force, and committing perjury.

COMPLAINT - 16

111.    The abuse to which plaintiff was subjected was consistent with an institutionalized practice of the NYPD, which was known to and ratified by defendant City.

112.    Despite knowledge of these institutionalized practices, defendant City has at no time taken any effective action to prevent NYPD personnel from continuing to engage in this type of misconduct.

113.    Defendant City had prior notice of the vicious propensities of defendants Mead and Does 1-10, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

114.    The failure of defendant City to properly train defendants Mead and Does 1-10 included the failure to instruct them in applicable provisions of the State Penal Law of the State of New York, federal and state constitutional limitations, and the proper and prudent use of force.

115.    Defendant City authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by, among other things:

116.    Failing to properly discipline, train, restrict, and control employees, including defendants Mead and Does 1-10, known to be irresponsible in their dealings with citizens of the community;

117.    Failing to take adequate precautions in the training, hiring, promotion, and retention of police personnel, including specifically defendants Mead and Does 1-10.

118.    Failing to forward to the office of the District Attorney of Kings County evidence of criminal acts committed by police personnel;

119.    Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding

1    to these types of complaints with bureaucratic power and official denials calculated to mislead

2    the public.

3           120.    That the failure to supervise and/or train by defendant City of defendants Mead

4    and Does 1-10 rose to the level of deliberate indifference to the consequences of its actions, and

5    indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the

6    United States of America, inter alia, plaintiff's Fourth and Fourteenth Amendment rights.

7           121.    The NYPD has inadequately screened, hired, retained, trained, and supervised its

8    employees, including the individual defendants herein, to respect the constitutional rights of

9    those individuals with whom NYPD police officers come in contact.

10          122.    The foregoing customs, policies, practices, procedures, rules, and usages

11   constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

12          123.    The foregoing customs, policies, practices, procedures, rules, or usages were the

13   direct and proximate cause of the constitutional violations suffered by plaintiff.

14          124.    The foregoing customs, policies, practices, procedures, rules, or usages were the

15   moving force behind the constitutional violations suffered by plaintiff.

16                **EIGHTH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS**

17                  **(Violation of Civil Rights under 42 U.S.C. § 1981)**

18          125.    Plaintiff repeats and realleges each and every allegation set forth above as though

19   fully set forth at length herein.

20          126.    Plaintiff is Caucasian and defendants Morris, Coombs, and Roe are African-

21   American, as are defendants Mead and the female "Doe" officer who accompanied defendant

22   Mead to plaintiff's apartment on May 13, 2014 and May 27, 2014, and who participated in

23   assaulting, arresting, imprisoning, and prosecuting plaintiff, are African-American.

COMPLAINT - 18

127. The individual defendants, singly and collectively, impaired plaintiff's right to make and enforce contracts, to wit, the terms of his residential lease, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

128. Defendants discriminated against plaintiff based on his race.

129. Defendants' verbal and physical abuse of plaintiff, their false arrest and malicious prosecution of him, and their fabrication of evidence and perjurious testimony were motivated by racial bias against plaintiff.

130. Defendant City is also liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior

## NINTH CLAIM - AGAINST ALL DEFENDANTS

### (Violation of Civil Rights under 42 U.S.C. § 1982)

131. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

132. The individual defendants, singly and collectively, impaired plaintiff's right to make and enforce contracts, to wit, the terms of his residential lease, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

133. Defendant City is also liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

COMPLAINT - 19

1    **TENTH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS**

2    **(Violation of Civil Rights under 42 U.S.C. § 1985[3])**

3         134.   Plaintiff repeats and realleges each and every allegation set forth above as though

4    fully set forth at length herein.

5         135.   Defendants, by their above-described actions, acting in concert, conspired to

6    deprive plaintiff of the equal protection of the laws, and/or the equal privileges and immunities

7    under the laws, as well as for the purpose of preventing or hindering the constituted authorities

8    of the State and City of New York from giving or securing to plaintiff the equal protection of

9    the laws.

10        136.   Defendants' actions were motivated by an invidious discriminatory animus, to

11   wit, defendants were motivated by racial and religious bias against plaintiff.

12   **ELEVENTH CLAIM - AGAINST ALL DEFENDANTS**

13   **(Violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq.)**

14        137.   Plaintiff repeats and realleges each and every allegation set forth above as though

15   fully set forth at length herein.

16        138.   The individual defendants, singly and collectively, by their herein described

17   conduct, discriminated against plaintiff and initiated an unlawful eviction, false arrest, malicious

18   prosecution, and an assault and battery of plaintiff because of plaintiff's religion, and, due to

19   plaintiff's religion, coerced, intimidated, threatened and/or interfered with, or attempted to

20   coerce, intimidate, threaten or interfere with, plaintiff's exercise or enjoyment of rights in

21   violation of 42 U.S.C. § 3601, et seq., including, without limitation, 42 U.S.C. §§ 3604 and

22   3617.

COMPLAINT - 20

1   139.   Defendant City is also liable for the damages suffered by plaintiff as a result of

2   the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

3   **Supplemental State Law Claims**

4   140.   Plaintiff repeats and realleges each and every allegation set forth above as though

5   fully set forth at length herein.

6   141.   All of the causes of action pleaded herein fall within one or more of the

7   exceptions set forth in New York's Civil Practice Law & Rules § 1602 with respect to joint and

8   several liability.

9   **TWELFTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE**

10   **(False Arrest/Imprisonment Under New York Law)**

11   142.   Plaintiff repeats and realleges each and every allegation set forth above as though

12   fully set forth at length herein.

13   143.   Defendants, acting in concert, arrested and caused plaintiff to be imprisoned

14   without probable cause to believe that plaintiff had committed any crime or offense, and

15   without any warrant or authority to do so.

16   144.   Defendant CITY is also liable for the damages suffered by plaintiff as a result of

17   the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

18   **THIRTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE**

19   **(Assault Under New York Law)**

20   145.   Plaintiff repeats and realleges each and every allegation set forth above as though

21   fully set forth at length herein.

22   146.   Defendants, acting in concert, placed plaintiff in apprehension of imminent

23   harmful and offensive bodily contact.

COMPLAINT - 21

1    147.    Defendant CITY is also liable for the damages suffered by plaintiff as a result of

2    the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

3    **FOURTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE**

4    **(Battery Under New York Law)**

5    148.    Plaintiff repeats and realleges each and every allegation set forth above as though

6    fully set forth at length herein.

7    149.    Defendants, acting in concert, made offensive contact with plaintiff without

8    privilege or consent.

9    150.    Defendant CITY is also liable for the damages suffered by plaintiff as a result of

10    the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

11    **FIFTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE**

12    **(Abuse of Process Under New York Law)**

13    151.    Plaintiff repeats and realleges each and every allegation set forth above as though

14    fully set forth at length herein.

15    152.    Defendants, acting in concert, employed regularly issued process against plaintiff

16    compelling the performance or forbearance of prescribed acts.  The purpose of activating the

17    process was intent to harm plaintiff without economic or social excuse or justification, and the

18    defendants were seeking a collateral advantage or corresponding detriment to plaintiff which

19    was outside the legitimate ends of the process.  Such collateral objective included, but was not

20    limited to, covering up defendants' illegal actions in knowingly arresting plaintiff without any

21    legal basis, justification, or probable cause.

22    153.    Defendant CITY is also liable for the damages suffered by plaintiff as a result of

23    the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

COMPLAINT - 22

## SIXTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE

### (Conversion)

154.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

155.    Defendants, singly and collectively, took unauthorized possession of plaintiff's personal property, and acted to exclude the rights of plaintiff to recover said property, of which plaintiff was the owner and had the exclusive right to possession.

## SEVENTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE

### (Violation of Plaintiff's Rights under the New York State Constitution)

156.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

157.    Defendants, acting in concert, engaged in the aforesaid conduct which was extreme, outrageous, shocking and which exceeded all reasonable bounds of decency.

158.    Defendants' extreme and outrageous conduct was intended to cause and did cause severe emotional distress to plaintiff.

159.    Defendant CITY is liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants and/or employees, under the doctrine of respondeat superior.

## EIGHTEENTH CLAIM - AGAINST DEFENDANTS MORRIS, COOMBS & ROE

### (Intentional Infliction of Emotional Distress)

160.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

COMPLAINT - 23

161.    Defendants, acting in concert, engaged in the aforesaid conduct which was extreme, outrageous, shocking and which exceeded all reasonable bounds of decency.

162.    Defendants engaged in such extreme and outrageous conduct with intent to cause, or with the disregard of a substantial probability of causing, severe emotional distress to plaintiff.

163.    Said extreme and outrageous conduct by defendants caused plaintiff to suffer severe emotional distress.

### NINETEENTH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

### (Violation of New York City Human Rights Law)

164.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

165.    The individual defendants, singly and collectively, by their herein described conduct, discriminated against plaintiff and initiated an unlawful eviction, false arrest, malicious prosecution, and an assault and battery of plaintiff because of plaintiff's religious faith and creed, in violation of New York City Administrative Code §§ 8-107, 8-126, et seq.

166.    The individual defendants, singly and collectively, by their herein described conduct, coerced, intimidated, threatened and/or interfered with, or attempted to coerce, intimidate, threaten or interfere with, plaintiff's exercise or enjoyment of rights granted or protected pursuant to the New York City Administrative Code §§ 8-107, 8-126, et seq.

### TWENTIETH CLAIM - AGAINST ALL INDIVIDUAL DEFENDANTS

### (Unlawful Eviction under RPAPL § 853)

167.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

COMPLAINT - 24

168.   Defendants, who never secured a warrant of eviction, singly and collectively, acting principally and in concert, by their herein described conduct, deliberately engaged in unlawful self-help and forcibly, intentionally and unlawfully evicted plaintiff from premises in which he was legally entitled to live and remain.

169.   Defendants, singly and collectively, acting principally and in concert, by their herein described conduct, disseized, ejected, and put plaintiff out out of real property in a forcible and unlawful manner, and, after plaintiff was put out, held and kept plaintiff out by force and by putting him in fear of personal violence and by unlawful means.

170.   Accordingly, plaintiff is entitled to the full measure of damages allowed by law, including compensatory, punitive, and treble damages.

*     *     *

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all the defendants:

a.  Compensatory damages in an amount to be determined at trial;

b.  Treble damages under RPAPL § 853;

c.  Punitive damages in an amount to be determined at trial;

d.  Attorney's fees pursuant to 42 U.S.C. § 1988;

e.  An award of plaintiff's costs of suit;

f.  Pre-judgment and post-judgment interest;

g.  Such other relief as this Court deems just and proper.

Dated this 12th day of May, 2015

Ameer Benno, Esq. [AB-1130]

BENNO & ASSOCIATES P.C.
30 Wall Street, 8th Floor
New York, NY 10005
Tel.: (212) 227-9300

Attorneys for Plaintiff

COMPLAINT - 26